·GILMAN (POTOMAC COMPANY v.). See Case No. 11,317.

---

## Case No. 5,446.

### GILMAN v. The TYLER.

[3 Woods, 111.] [1]

·Circuit Court, D. Louisiana. Nov. Term, 1877.

·COLLISION BETWEEN VESSEL IN DISTRESS AND RESCUING VESSEL.—ERROR IN JUDGMENT.

1. A steamboat was, upon a dark and stormy night, drifting in a helpless and perilous condition on the Mississippi river, blowing signals ·of distress, and the lives of all on board were ·in jeopardy, and the peril was imminent. A steam-tug, on approaching her for the purpose ·of affording succor to the passengers and crew, collided with and sunk her. *Held*, that the steam-tug was not liable in damages if her ·attempt at succor was made in good faith, and with reasonable judgment and skill.

2. In such case the degree of judgment and skill should not be weighed with scrupulous ·nicety.

[Appeal from the district court of the United States for the district of Louisiana.]

On the morning of February 4, 1876, about four o'clock, the steamboat Garry Owen, which was the property of the libelant [William T. Gilman], collided with the steam-tug Tyler, on the Mississippi river, in front of the city of New Orleans. The effect of the ·collision was the breaking of a hole in the starboard side of the Garry Owen, near her stern, from which she sank and became a ·total loss. The libel was filed to recover· of ·the Tyler the damages sustained by the owner of the Garry Owen from the collision.

Charles B. Singleton and R. H. Browne, ·for libelant.

M. M. Cohen, for claimant.

WOODS, Circuit Judge. The Garry Owen came into the harbor of New Orleans about ·4 o'clock in the morning of February 4, 1876. It was very dark, and the wind was blowing

a gale from·the north, and off the New Orleans shore. The wind and darkness made the landing of a steamboat a very difficult and dangerous task. The Garry Owen made several unsuccessful attempts to land—one below Canal street and others above. In making the last attempt, the Garry Owen came in collision with the steamboat Mary Bell, which was lying moored to the wharf, and the fantail of the Garry Owen was caught under the guard of the Mary Bell, and the wheel of the Garry Owen was thereby disabled, and she became unmanageable, and drifted from shore up stream and towards the middle of the river, in a helpless condition. She blew her whistle repeatedly as a signal of distress. The steam-tug Little Jerry went to her assistance, but was too small to control her movements so as to bring her to the wharf. The Garry Owen drifted toward the iron-clad monitor Canonicus, which was lying at anchor about the middle of the river, struck her and then passed between her and the Algiers side of the river, and then drifted below. She continued to blow signals of distress, and the Tyler started to her assistance, and reached her about the time that the Little Jerry cut loose from her. When the Tyler approached her, the Garry Owen was in the edge of the eddy, and had again commenced to drift up the river, carried by the force of the eddy-current.

The complaint of the libelant is, that in approaching the Garry Owen the Tyler collided with her, and that the collision was occasioned by the gross negligence, inattention and want of proper care and skill on the part of the officers and crew of the Tyler. The claimants assert that there was no gross negligence, or want of ordinary care, and that the·collision was the result of inevitable accident. There can be no question that the Garry Owen was helpless and in a perilous condition at the time the Tyler approached her, nor that she was then and for some time previous had been blowing signals of distress and calls for help, nor that the purpose of the Tyler was to save her and her officers, crew and passengers, who were in imminent danger of their lives. Under such circumstances, all that was required of the Tyler was that, in making an effort to save the Garry Owen, she should act in good faith and with reasonable judgment and skill: The Laura, 14 Wall. [81 U. S.] 333. The burden of proof is on the libelant to prove negligence and want of skill. The mere fact that the Tyler, under the circumstances, collided with and damaged the Garry Owen, does not of itself prove negligence ·or want of skill: The Gray v. The Fraser, 21 How. [62 U. S.] 184; The Heroine [Case No. 6,417]; The Marpesia, 1 Asp. Marit. Law Cas. 261. Have negligence and want of ordinary skill been shown on the part of the Tyler? In my judgment they ⌐ have not.

The almost unbroken current of the testimony is, that the night was exceedingly dark and a violent gale, almost a hurricane, was blowing. The attempts of the Garry Owen to land, and the result of her attempts, are stated by A. P. Trousdale, a witness for libelant. He says, "After we made two or three unsuccessful attempts to land, I went to the hurricane roof with Captain Gillam, the master of the Garry Owen. While I was on the roof, she attempted to land just below Canal street. At that time the other pilot had just come on watch, and not making a successful landing, and coming in so rapidly, the captain had her backed out again. She went out, and the next attempt she made was to land alongside the Mary Bell, and the wind and the eddy took her up so rapidly that they found she would sink the Mary Bell, or smash herself to pieces, and she was again backed out, her stern backed to the wind, and she came round against the Mary Bell's guard. Her stern landed against the Mary Bell's bow, and she landed against her. They then put a line out, and that line either broke or was not made fast at all, and the boat passed up with the eddy and the wind above the Mary Bell. The Garry Owen's wheel became unmanageable. She could not turn it. She then floated away by the stern. She went up and struck a barge or hay-boat that we were landed against there, and as she struck that, she drifted out into the stream in front of the Canonicus." She then, according to the same witness, drifted out to the middle of the stream, and by the aid of the Little Jerry was barely able to avoid a direct collision with the Canonicus, which she passed on the Algiers side. She then drifted below the Canonicus, and had got into the edge of the eddy on the New Orleans side, and was drifting up stream, when the Tyler came to her assistance. All the time after she became disabled she was blowing signals of distress. When the Tyler started for her she was in the neighborhood of the Canonicus, and the officers of the Tyler supposed, and had reason to suppose, that she was in imminent peril and demanded prompt succor. To save life, and for that purpose only, the captain of the Tyler swears that he went to the assistance of the Garry Owen. When he neared her, the evidence is positive that he gave orders to back his engine and that the order was promptly obeyed. Nevertheless, the Tyler still had head-way, and the Garry Owen was carried up by the eddy, and the two collided with each other. I have been able to find no fault in the captain and officers of the Tyler. It must be remembered that the Garry Owen had just made four ineffectual attempts to land, and that in making the last she had disabled her wheel and become helpless. If the Garry Owen had found it impossible to land at the wharf without serious damage to herself, how much more difficult was it for the Tyler to approach her in mid-stream, where she was drifting helpless at the mercy of the wind and currents. The occasion was one which appeared to demand promptitude and haste in order to save human life. It so appeared to the officers and crew of the Tyler. During a night intensely dark, with a gale blowing, the Tyler was called by the signal of distress from the Garry Owen, to render her immediate and speedy help. No more difficult or dangerous feat of seamanship could be demanded of the Tyler than to approach promptly and speedily and lay alongside the Garry Owen, herself helpless and drifting at the mercy of wind and waves. Under such circumstances, when human life was or might reasonably be supposed to be in peril, the court, in case of disaster resulting from the effort to save life, ought not to measure the degree of skill and judgment displayed with scrupulous nicety: The Columbus [Case No. 3,043]; The Genesee Chief v. Fitzhugh, 12 How. [53 U. S.] 443.

I believe that the Tyler made the effort in good faith and with reasonable judgment and skill, and although the attempt resulted in the sinking of the Garry Owen, yet the Tyler ought not to be held responsible for the loss. Libel dismissed at libelant's cost.